IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HORACE CLAIBORNE, SONJIA MONIQUE BOWLIN, TYSHAWN WALKER, WILLIE SEALS, FREDERICK EPPICH, JEROME SCHOOLFIELD, KRISTINA TRAVIS, JEREMY WINKELS, ARTHUR FOSTER III, ERNESTO DIAZ, GERALD GENSOLI, and THOMAS DEPPIESSE,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>Defendant. | No. 18-cv-1698<br><br>Judge Robert J. Colville |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is a "Motion on Misjoinder, Change of Venue, and Separate Trials" (the "Misjoinder Motion") (ECF No. 553) filed by Defendant Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc., ("FedEx") in this matter.[1] FedEx seeks severance of the claims set forth by Plaintiffs in the operative Second Amended Complaint (the "Complaint") (ECF No. 539) due to misjoinder under Federal Rule of Civil Procedure 21 and, thereafter, transfer of each Plaintiff's case to the federal courts corresponding to the states of each Plaintiff's employment with their Service Provider.[2] Plaintiffs Horace Claiborne, Sonjia Monique

---

[1] The Court notes that several other motions, including motions for summary judgment, motions to compel, motions for sanctions, a motion addressing Plaintiffs' damages calculations, and a motion to strike expert evidence are also pending on the docket in this matter at this time. Because the issues of misjoinder and whether a change of venue is appropriate are threshold issues, the Court must first resolve them before adressing the other pending substantive motions.

[2] The law firm Lichten & Liss-Riordan P.C. ("Plaintiffs' counsel") represents the plaintiffs in each of the four lawsuits pending against FedEx before the undersigned at 2:18-cv-1698, 2:24-cv-1127, 2:24-cv-1128, and 2:24-cv-1129.

1

Bowlin, Tyshawn Walker, Willie Seals, Frederick Eppich, Jerome Schoolfield, Kristina Travis, Jeremy Winkels, Arthur Foster III, Ernesto Diaz, Gerald Gensoli, and Thomas Deppiesse (collectively, "Plaintiffs") have filed a Response in Opposition (ECF No. 560) and a Notice of Supplemental Authority (ECF No. 569) as to the Misjoinder Motion. FedEx has filed a Reply (ECF No. 563), a Response (ECF No. 570) to Plaintiffs' Notice of Supplemental Authority, and a Notice Supplementing the Record (ECF No. 761). Accordingly, the Misjoinder Motion has been fully briefed and is ripe for disposition.

## I. Background

As this Court has noted in previous opinions in this case, Plaintiffs assert that they were employed by FedEx through intermediary employers[3] to perform delivery services on FedEx's behalf. Second Am. Compl. ¶¶ 30; 32, ECF No. 538. Plaintiffs further assert that FedEx has violated the FLSA and certain states' laws by not paying overtime compensation to Plaintiffs for all hours worked over forty each week. *Id.* at ¶¶ 33-34. Because the Court has set forth the factual background and procedural history of this matter at length in its previous opinions, the Court foregoes a detailed recitation of the factual background and previous procedural history in this Memorandum Order, and will merely detail the procedural developments that brought about the Misjoinder Motion.

On October 8, 2019, Judge Dodge entered an Order conditionally certifying the following nationwide (excluding Massachusetts) collective:

> All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) or a contracted service provider (CSP) since November 27, 2015, who operated a vehicle weighing less than 10,001

---

[3] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record. The distinction between ISPs and CSPs is not relevant to this Court's consideration of the present Motions, and the Court will refer to ISPs and CSPs collectively as "Service Providers."

pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week.

Order, ECF No. 109. This case was subsequently reassigned from Judge Dodge to the undersigned on February 4, 2020. Order, ECF No. 137.

Following years of protracted motion practice, opt-in procedure, and discovery, Plaintiffs moved for voluntarily decertification of the conditional collective in this matter and for the dismissal of all remaining opt-ins on April 30, 2024, citing a desire to avoid expense and time associated with decertification following the decision of the United States District Court for the District of Massachusetts in *Roy v. FedEx Ground*, 2024 WL 1346999 (D. Mass. Mar. 29, 2024), wherein that court decertified a similar collective. ECF No. 523 at 1-2. The Court granted the decertification motion on May 2, 2024, and dismissed the remaining opt-ins, tolled their statute of limitations through August 6, 2024, and noted that the only remaining claims pending before the Court at that time were those of the twelve remaining named Plaintiffs. ECF No. 526. On the same date, the Court entered a Case Management Order (ECF 527) setting forth deadlines for discovery and briefing on FedEx's anticipated motion addressing misjoinder and venue.

On May 15, 2024, FedEx moved to vacate the briefing deadlines set by this Court's Order due to Plaintiffs' decision to not withdraw their Rule 23 class allegations from the then-operative First Amended Complaint, arguing that class certification should be resolved before the misjoinder and venue issues. *See* ECF No. 530. On June 10, 2024, the Court granted FedEx's motion over Plaintiffs' objection, providing:

> ORDER granting [530] Motion to Vacate. FedEx's Motion to Vacate the Briefing Schedule on the Issues of Misjoinder, Change of Venue, and Separate Trials is granted. The Court finds that FedEx has established good cause for modification of the Case Management Order at [527]. While Plaintiffs have asserted that they do not intend to move for class certification before this Court, the simple fact remains that Plaintiffs have asserted Rule 23 class action claims in the operative complaint, and those claims have neither been dismissed nor withdrawn. Plaintiffs

3

acknowledge that the motions FedEx seeks to file are permissible under Third Circuit precedent. *See Richardson v. Bledsoe*, 829 F.3d 273, 288 (3d Cir. 2016) ("Accordingly, we join the courts of appeals which have held that '[n]othing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.'" (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 93940 (9th Cir. 2009)). Class discovery has been ongoing in this case for years, and FedEx is permitted to raise the issue of class certification before the Court. Because Plaintiffs have indicated that they are not prepared to withdraw their Rule 23 claims, the Court will allow for briefing on class certification. Thereafter, the Court will reset the deadlines for motions for misjoinder/change of venue/separate trials. The Court hereby vacates the deadlines for briefing set forth at [527] on the issues of misjoinder, change of venue, and separate trials, and finds that those issues have not been waived. FedEx has leave to file the motions discussed in its Motion at [530]. Given the involved motion practice that is likely to follow, and given that it is not clear what structure the eventual trial in this matter will take, the Court denies Plaintiffs' request that the Court set a date for trial at this time.

ECF No. 538.

On July 24, 2024, Plaintiffs filed the Complaint, which is factually consistent with Plaintiff's First Amended Complaint, and withdrew their Rule 23 allegations. FedEx then filed the Misjoinder Motion on August 6, 2024, which, as noted, is now fully briefed. FedEx argues that, following decertification and in light of Plaintiffs' withdrawal of their Rule 23 allegations, the individual claims of the remaining twelve Plaintiffs should be severed and transferred to more convenient forums. FedEx requests:

> [T]he Court to enter an order severing the 12 named Plaintiffs' claims under Federal Rule of Civil Procedure 21 due to misjoinder and, thereafter, to transfer each Plaintiff's case to the federal courts corresponding to the states of each Plaintiff's employment. In the alternative, FedEx requests, at a minimum, the Court enter an order requiring separate trials under Rule 42 in this venue. There is nothing that ties the remaining Plaintiffs' claims together-all of whom worked in different states, for different Service Providers, and for different periods of time.

ECF No. 553 at 1. Plaintiffs oppose FedEx's Misjoinder Motion, arguing that trying their claims together in this forum provides the most efficient and judicious path to a full and final resolution

of their claims, ECF No. 560 at 8, and that FedEx fails to meet its burden of establishing that a transfer of venue is appropriate, *id.* at 15.

## II. Legal Standard

### A. Joinder

Federal Rule of Civil Procedure 20, which addresses permissive joinder of parties, provides as follows with respect to joinder of plaintiffs:

Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1) (emphasis added). While misjoinder is not a ground for dismissal of a case, the Court may, on motion or on its own, add or drop a party or sever any claim against a party at any time on just terms. Fed. R. Civ. P. 21.

"[S]everance under Rule 21 creates independent actions resulting in separate judgments[,]" and is appropriate when the plaintiffs' claims "are 'discrete and separate,' each capable of resolution without dependence or effect on the other." *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486 (M.D. Pa. 2022). While the United States Court of Appeals for the Third Circuit "has not established specific parameters for deciding a motion to sever claims[,]" district courts often consider:

> (1) [W]hether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence.

*Henderson*, 639 F. Supp. 3d 486-87. Where the plaintiffs do not meet the standard for permissive joinder under Rule 20, "[t]he proper remedy is to grant severance or dismissal to the improper party if it will not prejudice any substantial right." *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972).

### B. Venue and Transfer

In general, a civil action may be brought in the following venues:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). 28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) ("[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." (citing *Stewart*, 487 U.S. at 30–31)). The movant bears

6

the burden of establishing the need for a transfer, and a plaintiff's choice of forum should not be lightly disturbed. *Jumara*, 55 F.3d at 879.

"While there is no definitive formula or list of the factors to consider" in ruling on a § 1404 motion, "courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Jumara*, 55 F.3d at 879 (citation omitted). The United States Court of Appeals for the Third Circuit has explained that:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

### III. Discussion

#### A. Misjoinder

FedEx provides the following summary of the claims that remain pending in this case at this juncture:

| No. | Plaintiff | State | Claims |
|---|---|---|---|
| 1 | Horace Claiborne | Virginia[2] | FLSA claim |
| 2 | Sonjia Bowlin | Arkansas | FLSA claim; Arkansas state law claim |
| 3 | Tyshawn Walker | Connecticut | FLSA claim |
| 4 | Willie Seals | Illinois | FLSA claim |
| 5 | Frederick Eppich | Maine | FLSA claim; Maine state law claim |
| 6 | Jerome Schoolfield | Maryland | FLSA claim |
| 7 | Kristina Travis | Michigan | FLSA claim |

| 8  | Jeremy Winkels    | Minnesota  | FLSA claim                              |
|----|-------------------|------------|-----------------------------------------|
| 9  | Arthur Foster III | New Jersey | FLSA claim; New Jersey state law claim  |
| 10 | Ernesto Diaz      | Oregon     | FLSA claim; Oregon state law claim      |
| 11 | Gerald Gensoli    | Vermont    | FLSA claim; Vermont state law claim     |
| 12 | Thomas Deppiesse  | Wisconsin  | FLSA claim; Wisconsin state law claim   |

ECF No. 555 at 2-3. FedEx asserts that Plaintiffs do not meet Rule 20's permissive joinder requirements, and that severance of their remaining claims is thus appropriate. *Id.* at 4. FedEx further argues that the Third Circuit's discretionary joinder factors favor severance, *id.* at 11, and that Plaintiffs' voluntary decertification also supports severance, *id.* at 13. FedEx argues that, following severance, each individual Plaintiff's case should be transferred to the federal courts corresponding to their states of employment. *Id.* at 15.

In arguing that Plaintiffs do not meet Rule 20's requirements, FedEx relies primarily on the argument that Plaintiffs do not assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences. ECF No. 555 at 4. FedEx notes that it has spent the majority of this litigation arguing that the Plaintiffs are not similarly situated, and that Plaintiffs have now conceded that point by voluntarily decertifying the collective in light of decisions reached by other courts and in withdrawing their Rule 23 allegations. *Id*. FedEx argues that it logically follows that what remains are twelve independent, unrelated claims, with Plaintiffs having vastly different work experiences with Service Providers. *Id*. FedEx asserts:

> Plaintiffs worked for different Service Providers in different states; Plaintiffs were paid differently; Plaintiffs had different interactions and types of interactions with FedEx personnel; Plaintiffs drove different types of vehicles with different weights; and Plaintiffs worked different weekly hours.

*Id.*[4] FedEx asserts that none of the Plaintiffs ever worked for the same Service Providers, and that, "[w]hen the facts arise from different practices, working conditions, and locations, it cannot be said that they arose from the same transaction or occurrence." *Id.* at 5.

In opposing the Misjoinder Motion, Plaintiffs argue that, while differences in vehicle weights, state law, work schedules, and Service Providers may be presented by the twelve individual Plaintiffs' claims, the issue of whether FedEx is a joint employer ties them together and common, if sometimes individualized, evidence may be introduced as to each Plaintiff with respect to "FedEx's authority over hiring and firing, work rules, supervision, and employment records, among other possible factors." ECF No. 560 at 2-3. Plaintiffs further argue that FedEx utilizes a uniform, nationwide "ISP Model" under which drivers are paid by Service Providers that contract directly with FedEx that requires each Service Provider to enter into largely standardized "Independent Service Provider Agreements" with FedEx that, while in some ways not identical, provide common evidence of FedEx's ability to control Plaintiffs' employment, including hiring criteria, driver duties, rules applicable to drivers, and terms of employment between drivers and service providers. *Id.* at 4-5. Plaintiffs argue that their claims "stem from one transaction—FedEx's ISP model—and present a common question—whether FedEx is a joint employer[,]" and that trying Plaintiffs' claims together in this forum provides the most efficient path to a full and final resolution of the remaining claims and will avoid redundant trials that could result in inconsistent verdicts, unnecessary delay, and a waste of judicial resources. *Id.* at 8. They assert that "[a]ny differences among Plaintiffs pale in comparison to their substantial commonalities, including the same rules and conditions that FedEx imposed on all drivers via the ISP Agreement."

---

[4] FedEx has submitted an "Appendix A" (ECF No. 552) citing to evidence of record supporting the myriad differences it perceives between the Plaintiffs' (including former opt-ins) circumstances.

9

*Id.* at 8-9. Plaintiffs further argue that, even if their claims are severed, FedEx has not met its burden of establishing that transfer is appropriate. *Id.* at 15.

Based upon the record in this case and following review of the parties' briefing, the Court finds that severance is appropriate, and that both the private and public *Jumara* factors favor transfer in this case. Accordingly, the Court will sever the claims of the twelve named Plaintiffs, and the Court will transfer these cases to the district courts located in Plaintiffs' states of employment. This case will be marked as closed in this District.

The Court acknowledges that the standard for maintenance of a collective or class action is different than that for Rule 20 permissive joinder, but it finds that Plaintiffs may overstate that distinction in arguing against severance.[5] Plaintiffs, while acknowledging that key distinctions exist among them,[6] rely entirely on an assertion that only the issue of joint employment will carry the day in this case, and that it supports the joinder of their claims. Courts considering this *exact* issue in the context of lawsuits against FedEx have entirely contradicted any such assertion. *See Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-CV-30116-KAR, 2024 WL 1346999, at *6-7 (D. Mass. Mar. 29, 2024) ("Even if the evidence on which Plaintiffs rely might be sufficient to establish that some or all of them were denied some measure of overtime pay, it does not show a common policy or practice imposed or endorsed by FedEx that resulted in the alleged failures to pay overtime. There is no dispute that FedEx and the ISPs are distinct organizations and that the

---

[5] While not the sole or primary basis for this Court's holding herein, it undeniably bears mentioning that Plaintiffs both voluntarily moved to decertify the FLSA collective and withdrew their Rule 23 class allegations in this case.

[6] *See Brannon et al. v. FedEx*, 2:24-cv-1128, ECF No. 33 at 12 ("Fourth, the complexity of the factual issues involved also weighs in Plaintiffs' favor. As FedEx itself has claimed, conducting an independent investigation into whether each of the 30,000 former *Claiborne* opt-ins have a valid claim for overtime wages would require sifting through, for each individual, pages of scanner data and pay stubs to determine whether: (1) they drove for an ISP within the statute of limitations period; (2) they drove, at any point, a vehicle with a Gross Vehicle Weight Rating of less than 10,001 pounds; (3) they worked more than 40 hours in any given week; and (4) they were not, in fact, paid overtime for those qualifying weeks. That is plainly impossible to do within 120 days, even for those individuals for whom FedEx has produced scanner data.").

10

ISPs hired and paid the drivers. . . . Even if the *Campbell* test is the correct approach, and even if Plaintiffs can prevail on the joint employment question by representative or common evidence, they will only reach the 'starting line,' *Martinez v. FedEx Ground Package Sys., Inc.*, Civ. No. 20-1052 SCY/LF, 2023 WL 7114678, at *17 (D.N.M. Oct. 27, 2023), by showing that FedEx was their employer. Such evidence would not tend to show that members of the provisional collective are similarly situated with respect to a consistent decision, policy, or practice that caused them to be deprived of overtime pay."); *id.* at *7 ("The court is not persuaded that Plaintiffs have met their burden of showing that Plaintiffs are similarly situated such that their claims can be tried by common or representative evidence."); *Martinez*, 2023 WL 7114678, at *21 ("The Court agrees with Plaintiffs that the joint-employment issue is a significant issue. Indeed, it is a threshold issue—as Defendant says, joint employment is required for Plaintiffs to even get to the starting line. Once there, *each driver would still have to prove their remaining case on an individual* basis: how they were paid; how many hours they worked, in what state they worked; and whether their pay included premium time for each hour over 40 in a week." (citation omitted) (emphasis added)); ECF No. 33-1 (citing *Alleyne et. al. v. Federal Express Corporation*, Case No. 1:24-cv-12031-MGM for its holding that "Judge Robertson's decision decertifying the collective action strongly suggests that this case and *Roy* do not actually share the common factual basis necessary to support the related case designation."); ECF No. 33-2 (citing *Doyle et. al. v. Federal Express Corporation*, Case No. 1:24-cv-12030-MGM for the same proposition).

Severance is also supported by decisions rendered by the Fifth Circuit in *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) (affirming denial of mass joinder of approximately 800 FLSA plaintiffs seeking overtime pay and providing "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and

when different witnesses and documentary proof would be required for plaintiffs' claims.") and the Ninth Circuit in *Alvarado v. City of Los Angeles*, 720 F. App'x 889, 904 (9th Cir. 2018) (dismissing all but one plaintiff in each of 28 lawsuits filed by approximately 2,500 plaintiffs, and explaining: "Plaintiffs-Appellants do not allege any greater connection between their claims than that the City's employees violated the FLSA in comparable ways, at various different times, and in various different divisions and bureaus.").

As noted, in determining whether severance is appropriate, courts consider whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof, whether severance would promote judicial economy, and whether either party will be unduly prejudiced by severance or its absence. *Henderson*, 639 F. Supp. 3d 486-87. Each of these factors favors severance in this matter.

FedEx has more than adequately set forth the distinctions between the Plaintiffs' claims in this case, and Plaintiffs have not truly contradicted any such assertion. *See* ECF No. 555 at 4-5 ("Plaintiffs worked for different Service Providers in different states; Plaintiffs were paid differently; Plaintiffs had different interactions and types of interactions with FedEx personnel; Plaintiffs drove different types of vehicles with different weights; and Plaintiffs worked different weekly hours. . . . When the facts arise from different pay, working conditions, and locations, it cannot be said that they arose from the same transaction or occurrence."); *id.* at 15 ("Different witnesses and documentary proof will be needed for each Plaintiff, such as pay and hours information from their Service Provider employers, vehicle information (particularly where FedEx's records are lacking), station management witnesses that can testify to Plaintiffs' specific claims about the allegations of control from each Plaintiff, as well as fact witnesses from the Service Providers themselves"). It bears further noting that, as to whether Plaintiffs assert

12

common questions of law and fact, six of the twelve Plaintiffs assert claims under the laws of their states of employment. The Court finds that Plaintiffs' claims do not arise from the same transaction, occurrence, or series of transactions or occurrences, and severance is thus appropriate.

As will be discussed in further detail below, severance and transfer in a case such as this, which has involved its fair share of hiccups and speed bumps while proceeding as a conditionally certified collective, will promote judicial economy and will not prejudice either party, as the issues will be simplified by severance and allow for a speedier path to trial for each individual Plaintiff. Continued litigation in this forum is likely to result in delay as the Court would be required to resolve twelve motions for summary (each presenting its own individualized factual scenario), several discovery motions and motions for sanctions, and a motion to exclude experts. While the Court is not unwilling to undertake the work required, it does find that efficiency and economy will be promoted by severance and transfer, and further finds that severance is appropriate under the discretionary factors discussed in *Henderson*.

### B. Transfer

The Court finds that transfer of Plaintiffs' severed claims is appropriate. Initially, there is no dispute that Plaintiffs' claims could have been brought before the district courts located in their places of employment. While Plaintiffs' preference is this District, the Court notes that, "[a]lthough the plaintiff's choice of forum is the most important *Jumara* factor, it becomes significantly less so when the district is not the home forum of the plaintiff and most of the alleged activity did not occur there." *Tatum v. Nat'l Football League*, No. 2:13-CV-01814, 2014 WL 1652794, at *5 (W.D. Pa. Apr. 24, 2014). Because none of the twelve Plaintiffs can claim the Western District of Pennsylvania as their home forum, and because most of the activity at issue in this case occurred outside of this District, this *Jumara* factor is, at most, neutral.

FedEx prefers to litigate Plaintiffs' claims in Plaintiffs' home forums, where Plaintiffs worked and where most witnesses and evidence will be located and available. While usually entitled to less weight, the Court does find that this factor weighs in favor of transfer.

The Court does acknowledge, however, that FLSA claims arise in both the plaintiff's state of employment, where the policies at issue are effectuated, and in the forum in which the defendant is headquartered, where the employer would have determined and maintained the challenged policies and practices. *Escalet v. Canada Dry Potomac Corp.*, No. CV 23-329, 2023 WL 5152626, at *4 (E.D. Pa. Aug. 10, 2023) (quoting *Stewart v. First Student, Inc.*, No. CV 20-2556, 2022 WL 16731231 at *3 (E.D. Pa. Nov. 7, 2022)). Because FedEx was headquartered in this District during most, if not all, of the timeframe relevant herein,[7] this factor weighs slightly against transfer, given that Plaintiffs' claims also clearly arose in their districts of employment as well.

As for convenience of the parties, the Court finds this *Jumara* factor to be neutral. While the Court tends to agree with FedEx that inconvenient travel will be necessitated by litigation here, Plaintiffs have chosen this forum. While not directly raised by Plaintiffs, the Court does note that "the location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Tatum*, 2014 WL 1652794, at *5 (*Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970).

With respect to the convenience of witnesses, FedEx correctly notes that many witnesses will be forced to travel if this case remains in this District given that Plaintiffs' home forums and states of employment are located throughout the country, with no Plaintiff claiming Pennsylvania as a home forum. These witnesses are also outside the Court's subpoena authority under Fed. R. Civ. P. 45(c)(1), and this factor weighs in favor of transfer. The location of books and records factor is neutral.

---

[7] FedEx is now headquartered in Tennessee. *See* ECF No. 563 at 12.

As to the public factors, the enforceability of the judgment factor is neutral, as a judgment here or in the Plaintiffs' home forums would be enforceable.

As for practical considerations that could make the trial easy, expeditious, or inexpensive and the relative administrative difficulty in the two fora resulting from court congestion, the Court finds that judicial economy and efficiency will be served by severance and transfer in this matter.[8] While the Court has issued several opinions in this case, most have dealt with procedural or discovery issues, and any assertion of this Court's familiarity with each of the remaining Plaintiff's specific claims is simply overstated. Moreover, FedEx has filed motions for summary judgment as to each of the twelve Plaintiff's claims, as well as motions for discovery sanctions, and Plaintiffs have filed a motion to exclude FedEx's experts. While the Court would strive to deal with these motions expeditiously, the simple truth of the matter is that the separation of Plaintiffs' claims and transfer to separate jurisdictions will simplify issues and allow for speedier resolution than this Court can provide. A single trial with twelve distinct claims also presents ample opportunity for juror confusion. Simply put, while Plaintiffs' counsel might be adversely affected by transfer, Plaintiffs themselves will likely be benefitted. Where FedEx's counsel stated in a sworn declaration that Plaintiffs' counsel stated that the parties "can have fun [litigating these cases] together for the next 10 years or more," *see Atwood v. FedEx*, 2:24-cv-1127, ECF No. 26-1 at ¶

---

[8] While not the basis for this Court's decision, it bears noting the Plaintiffs' counsel has filed three new lawsuits that it has designated as related to this action before the undersigned in this District, with two of those lawsuits attempting to join the claims of almost 400 and 12,000 of former opt-ins and individuals who had been dismissed with prejudice in this case, as well as individuals who have had no involvement in this case. FedEx describes these actions, in this Court's estimation not unfairly, as "incoherent mass actions" attempting to make an "end run around" other courts' decisions to deny certification or decertify cases. ECF No. 563 at 7. The Court finds these new lawsuits telling in that they tend to indicate that Plaintiffs, despite voluntary withdrawal of both their collective and class allegations on the basis of other courts' decisions respecting the viability of such allegations, still believe that these cases can be litigated on a class-wide basis, whether the case involves two plaintiffs, twelve plaintiffs, hundreds of plaintiffs, or thousands of plaintiffs. The idea that this Court could hold a trial involving hundreds or thousands of plaintiffs where plaintiffs themselves acknowledge that individual issues exist in this matter involving twelve plaintiffs is untenable. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) ("[B]ut Acevedo fails to cite any cases in which a group of plaintiffs even remotely as numerous as 800 were able to join their claims.").

18, and where Plaintiff's counsel failed to truly dispute that statement, the Court believes it is plain that joint litigation is against the interest of both judicial efficiency and economy, and is rather, quite possibly, being used as a cudgel to attempt to force a settlement that has not yet been, and appears unlikely to be, reached. These factors weigh heavily in favor of transfer.

The factor of the local interest in deciding local controversies at home weighs in favor of transfer, as six of the Plaintiffs assert claims under the laws of their states of employment. The public policies of the fora and the familiarity of the trial judge with the applicable state law in diversity cases factors are neutral given that any federal court would have original and supplemental jurisdiction in this matter.

Only one of the *Jumara* factors weighs in favor of transfer, and only slightly. The other *Jumara* factors are either neutral or weigh in favor of transfer, some heavily. This Court is vested with broad discretion in determining whether convenience and fairness warrant transfer. Having considered the relevant factors, the Court finds that transfer is both warranted and appropriate.

### IV. Conclusion

For the reasons discussed above, the Court will grant the Misjoinder Motion. As noted, this case will be closed in this District. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 29, 2025
cc: All counsel of record